IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRENDA LAWSON,

        Plaintiff,

v.                              CIVIL ACTION NO. 2:19-cv-00634

CITY OF DUNBAR,

        Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Before this Court is the complaint filed by Plaintiff Brenda Lawson ("Plaintiff"). (ECF No. 2.) For the reasons explained more fully herein, it is respectfully **RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

I.    BACKGROUND

This action arises from a series of events that allegedly occurred on April 29, 2019. (ECF No. 2 at 2–3.) Plaintiff avers that she and her fifteen-year-old son were ordering food at a restaurant and being watched by Michael Lester ("Lester"), a police officer employed by Defendant City of Dunbar (the "City") who was eating at the restaurant. (*Id.* at 2.) According to Plaintiff, as she left the restaurant, she "check[ed] [her] food and decided to take it back," so she drove around the block and parked in the restaurant's parking lot. (*Id.*) Plaintiff alleges that when she exited her vehicle to walk into the

restaurant, Lester turned his police cruiser's blue lights on and told her to return to her car. (*Id.*; *see* ECF No. 2-1 at 7.) She further alleges that Lester pointed out that she had a "bad sticker" and threatened to give her a ticket. (ECF No. 2 at 2; *see* ECF No. 2-1 at 7.) She avers that she gave him her insurance and vehicle registration cards, and her "tags was [sic] dead for 29 days." (ECF No. 2 at 2.) Shortly afterward, Lester discovered that Plaintiff's driver's license "was suspended for 28 unpaid citations and 3 mandatory insurance." (ECF No. 2-1 at 7.) Plaintiff alleges that she "had no warrants for the 28 unpaid citations and 3 mandatory insurances at that time." (ECF No. 2 at 2.) Lester also contacted Plaintiff's automobile insurance company and learned that her policy had been "dropped." (ECF No. 2-1 at 7; *see* ECF No. 2 at 3.)

According to Plaintiff, Lester then said that he smelled marijuana and that "he was going to take [her] for a blunt roach," and when Plaintiff told him that she was taking her son to school and she did not have marijuana, Lester arrested her and placed her "in another cruiser." (ECF No. 2 at 2.) Plaintiff alleges that while she was sitting in the cruiser, she "heard [Lester] call off the dogs because there was nothing." (*Id.*) Then, Plaintiff avers, Lester searched her son and his bag of food before taking Plaintiff to the police precinct. (*Id.*)

Plaintiff alleges that once there, she was placed in a holding cell, fingerprinted, and moved to a different holding cell that was dirty and had no seat, so she "had to clean up the cell so [she] could sit down." (*Id.*) She avers that several hours later, Lester took her to the courthouse, where she met with the municipal court clerk, Vonda Cochran ("Cochran"), instead of the municipal court judge because "there was no judge . . . that day." (*Id.*) Plaintiff was charged with driving with a suspended license, not having automobile insurance, having expired vehicle registration, and having an expired vehicle

2

inspection sticker. (ECF No. 2-1 at 3–4, 6–7.) According to Plaintiff, Lester "made [Cochran] nervous" and "made her have [Plaintiff] sign papers that he told [Cochran] what to write," but Cochran "didn't finish signing" the bail paperwork because "she was saying that she couldn't and never did this." (*Id.*) Plaintiff alleges that she requested a "PR bond," but Lester refused and set her bond at $200 cash. (*Id.*; *see* ECF No. 2-1 at 1, 11.) She further alleges that she asked Lester to use the phone, but he told her that she "couldn't use the phone till [she] got to jail" and to "just shut up and sign the criminal complaint." (ECF No. 2 at 2–3.) Plaintiff claims that Cochran permitted her to make a phone call, so she called a friend to come get her. (*Id.* at 2.)

Then, according to Plaintiff, she "set [sic] down in [her] seat" and Lester "punched [her] and said [she] was going to set [sic] in a cruiser for no reason." (*Id.*) Plaintiff alleges that Lester ran from the courthouse with Plaintiff's hands in front of her in handcuffs and was "trying to push [her] down." (*Id.*) She avers that another officer "came and helped [her] on [her] feet," but Lester yelled profanities at her and "smashe[d] [her] head on a hot cruiser hood and ripped [her] hair out from the root." (*Id.*) She further alleges that Lester put her in the police cruiser with no air conditioning, but another officer "let [her] out . . . to catch [her] breath" before returning her to the cruiser and turning the air conditioning on. (*Id.* at 2–3.)

Plaintiff avers that a short time later, Lester "had [her] come back in front of [Cochran]" on charges of obstructing a law enforcement officer and disorderly conduct stemming from the altercation. (*Id.* at 3; *see* ECF No. 2-1 at 13–16.) She claims that when Cochran gave her the paperwork, Plaintiff said, "I didn't do nothing," and Cochran replied, "I know," and took the paperwork from Plaintiff without signing it. (ECF No. 2 at 3.) According to Plaintiff, the obstructing a law enforcement officer and disorderly

3

conduct charges were later dropped. (*Id.*) Plaintiff alleges that after her friend posted her bond, she filed a complaint against Lester with the City's police department but never heard anything. (*Id.*)

## II. LEGAL STANDARD

Where, as here, a plaintiff seeks to proceed *in forma pauperis*, this Court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. § 1915(e). This Court must "dismiss a complaint filed *in forma pauperis* 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)). When reviewing an *in forma pauperis* complaint for failure to state a claim, this Court applies the same standards that it applies to review a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citing *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003)).

That is, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"

4

*Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas*, 841 F.3d at 637 (internal quotation marks omitted).

### III. ANALYSIS

Plaintiff purports to bring her claims pursuant to 18 U.S.C. § 242, a federal criminal statute. (ECF No. 2 at 1.) However, Plaintiff, as "[a] private citizen[,] lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). As such, Plaintiff has no private cause of action under 18 U.S.C. § 242. *Casey v. Whimbish*, No. 5:08-cv-01441, 2011 WL 7025926, at *1 n.2 (S.D.W. Va. Dec. 22, 2011), *adopted by* 2012 WL 113542 (S.D.W. Va. Jan. 13, 2012). The undersigned therefore **FINDS** that any claims Plaintiff seeks to bring under that statute must fail.

However, because 18 U.S.C. § 242 is the "criminal counterpart" of 42 U.S.C. § 1983, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 166 (1970), and because this Court must "liberally" construe Plaintiff's pro se complaint, *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018), the undersigned addresses Plaintiff's claims as if they were brought pursuant to § 1983. In order to state a claim under § 1983, the complaint "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state

5

law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011)).

A local government entity like the City—which is the only defendant identified in Plaintiff's complaint (ECF No. 2 at 1)—"is subject to [§] 1983 liability only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the plaintiff's injury." *Davison v. Randall*, 912 F.3d 666, 689 (4th Cir. 2019) (internal quotation marks omitted); *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) ("[T]he entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks omitted)). That is, "a municipality cannot be held liable [under § 1983] solely because it employs a tortfeasor." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (emphasis deleted) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see Lefemine v. Wideman*, 758 F.3d 551, 557 (4th Cir. 2014) ("Unless a government entity has a policy or custom of discrimination, a court will not attribute an individual's constitutional violations to the government entity." (citing *Monell*, 436 U.S. at 694)).

Here, Plaintiff does not expressly attribute the events of April 29, 2019, to any policy or custom of the City. (ECF No. 2.) Nor does she allege the existence of other similar incidents suggestive of a pattern of constitutionally deficient police practices. (*Id.*) *See Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("A plaintiff must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1386–91 (4th Cir. 1987))). Rather, she appears to seek to hold the City liable for Lester's actions, which she cannot

6

do.  *See Estate of Jones* ex rel. *Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020) ("Because *Monell* liability cannot be predicated on a theory of *respondeat superior*, a single incident is almost never enough to warrant municipal liability." (citing *Semple v. City of Moundsville*, 195 F.3d 708, 713–14 (4th Cir. 1999))).  Accordingly, the undersigned **FINDS** that her claims must fail.

### IV.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that Plaintiff's complaint (ECF No. 2) be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.  Copies of any objections shall be provided to Chief Judge Johnston.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff.

ENTER: July 15, 2020

Dwane L. Tinsley
United States Magistrate Judge